UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RAUL MUSQUIZ, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No.<br>) 09-40086-FDS |
| JEFF GRONDOLSKY, | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER ON RESPONDENT'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**SAYLOR, J.**

Petitioner Raul Musquiz[1] is a 49-year-old male who is currently serving a 168-month term of imprisonment for conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana. (*See* Resp't Ex. 1 at ¶ 4, Ex. A). Defendant Jeff Grondolsky is the warden at the Federal Medical Center in Devens, Massachusetts.

Musquiz has several chronic medical conditions, including hypertension, diabetes mellitus II, gastroesophageal reflux disease, and hyperlipidemia. He underwent a kidney transplant operation in 2002, and has been monitored regularly since that time. (*See* Resp't Ex. 2 at ¶ 4.) Musquiz was classified as a Care Level 4 inmate immediately following his surgery and has since been re-classified as a Care Level 3 inmate. (*Id.*). Both of these Care Level classifications require clinical contact or follow-up, which has been provided thus far at FMC

---

[1] Although the docket indicates that his name is "Muzquiz," petitioner's memorandum indicates that the proper spelling is "Musquiz." The Court will adopt the spelling used by petitioner.

Devens. (*Id.*). Musquiz has filed this habeas petition to compel FMC Devens to clear him medically and to transfer him to another BOP facility closer to his home state of Texas.

For the following reasons, the petition will be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## I. Background

### A. Original Designation

On August 23, 2004, Musquiz was sentenced in the Western District of Texas to 168 months' incarceration. (*See id.* at ¶ 5, Ex. B). He was reviewed by the BOP for his security and designation classification. (*See id.*). On September 16, 2004, an initial security designation classified Musquiz as a Care Level 4 "chronic care" inmate due to his 2002 kidney transplant and other medical conditions. (*Id.*). He was designated to FMC Devens. (*Id.*). Musquiz voluntarily surrendered to the U.S. Marshals Service in Del Rio, Texas, on December 1, 2004. (*See id.* at ¶ 6, Ex. B, Ex. C). He was transferred to FMC Devens on January 5, 2005, and arrived the same day. (*Id.*).

### B. Administrative Remedy History

While incarcerated at FMC Devens, Musquiz has filed multiple administrative remedy requests and appeals requesting that he be medically cleared for a transfer closer to his home state of Texas. (*See* Resp't Ex. 1 at ¶ 11, Ex. F). In doing so, he appears to have exhausted all administrative remedies available to him on this issue. (*See id.*).

On July 28, 2006, Musquiz submitted a Request for Administrative Remedy to the warden at FMC Devens requesting medical clearance for a transfer. (*See id.* at ¶ 12, Ex. G). The warden denied the request on August 23, 2006, on the grounds that a transfer out of FMC Devens was

not medically indicated at that time due to the fact that Musquiz's condition required active monitoring by the University of Massachusetts Renal Transplant Team. (*See id.*).

Also on July 28, 2006, Musquiz filed a separate Request for Administrative Remedy on the same issue, requesting medical clearance for a transfer; in that request, however, he contended that it was the clinical director of FMC Devens who was refusing to permit his medical clearance for transfer. (*See id.* at ¶ 13, Ex. J). The warden closed the case on August 10, 2006, as repetitive. (*See id.*). Musquiz appealed both responses.

On August 18, 2006, Musquiz filed a Regional Administrative Remedy Appeal to the Northeast Regional Office of the BOP. (*See id.* at ¶ 14, Ex. K). The Northeast Regional Director denied that appeal on September 13, 2006, on the grounds that Musquiz's classification as a Care Level 4 inmate was due to his transplant status and the need to monitor his condition. (*See id.*). The response concluded that Musquiz's placement at FMC Devens was appropriate and commensurate with his medical and security needs. (*See id.*).

On September 11, 2006, Musquiz filed a separate Regional Administrative Remedy Appeal to the Northeast Regional Office of BOP. (*See id.* at ¶ 15, Ex. H). Musquiz argued that he was now eligible for transfer because his doctors had advised him that he no longer needed to continue under their care. (*Id.*). On October 11, 2006, the Regional Director denied the appeal. (*Id.*). The denial indicated that although Musquiz's condition was stable, he was still being closely monitored by the UMass Renal Transplant Team and that he had an appointment scheduled for early 2007. (*Id.*). Musquiz appealed both regional responses.

On October 2, 2006, he filed a Regional Administrative Remedy Appeal to the Central Office of BOP. He argued that because he was five years post-transplant and his medical

providers told him that he did not need to continue under their care, he should be medically cleared and considered for transfer closer to his family in Texas. (*See id.* at ¶ 16, Ex. L). On March 7, 2007, the National Inmate Appeals Administrator granted Musquiz's request, and the matter was returned to FMC Devens for further processing. (*Id.*).

On October 30, 2006, Musquiz also filed a Regional Administrative Remedy Appeal to the Central Office requesting medical clearance and transfer to a region closer to Texas. (*See id.* at ¶ 17, Ex. I). On December 6, 2006, the National Inmate Appeals Administrator filed a response explaining that this submission was repetitive of his other request and would therefore not be addressed. (*Id.*).

### C. Subsequent Events

On March 13, 2007, following the National Appeals Administrator's granting of Musquiz's appeal, the warden filed a Medical/Surgical and Psychiatric Treatment Completed Referral Request, seeking re-designation to a Care Level 3 facility commensurate with Musquiz's security level and in close proximity to Texas. (*See id.* at ¶ 7, Ex. D). The attached discharge summary, completed by Musquiz's primary care physician at FMC Devens, indicated that Musquiz's status as a post-renal transplant patient was stable and that he was being actively monitored through the chronic care clinic and UMass transplant services. (*Id.*). The summary also provided that Musquiz's requirements for follow-up care included periodic chronic-care visits, follow-ups with a formal organ transplant service, and monthly monitoring of his sirolimus and tacrolimus levels (decreasing to every three months when levels became stable). (*Id.*). The request for re-designation was submitted to the BOP's Office of Medical Designations and Transportation ("OMDT") in the Central Office. The OMDT, however, denied the request on

March 29, 2007.  (*See id.* at ¶ 8, Ex. E).  The Chief of Health Programs for the BOP's Health Services Division stated that "although inmate Musquiz is Care Level 3, a formal organ transplant service is not available to the Care Level 3 institution in his region.  Currently, his medical needs are best served at [the FMC Devens] facility."  (*Id.*).

Musquiz remains designated to FMC Devens and his medical condition continues to be monitored through the FMC Devens chronic care clinic and the organ transplant service at UMass.  (*See* Resp't Ex. 2 at ¶ 5).  Musquiz's primary care physician at FMC Devens has asserted that "it is not in inmate Musquiz's best interest to be cared for at a facility other than FMC Devens."  (*Id.* at ¶¶ 6-7).

## II.     Subject Matter Jurisdiction

### A.     BOP's Exercise of Discretion

The right of habeas corpus is not a general right for judicial review of administrative decision-making.  *See Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003); *Carranza v. Immigration & Naturalization Serv.*, 277 F.3d 65, 71 (1st Cir. 2002) (citing *Goncalves v. Reno*, 144 F.3d 110, 125 (1st Cir. 1998)).  This Court cannot review an agency's legitimate exercise of its own discretionary powers unless the agency has done so in an unlawful or unconstitutional manner.  *See* 28 U.S.C. § 2241(c)(3) (a district court may issue a writ of habeas corpus when an individual is in custody "in violation of the Constitution or laws or treaties of the United States."); *Saint Fort*, 329 F.3d at 203; *Carranza*, 277 F.3d at 71; *Goncalves*, 144 F.3d at 125; *see also* 5 U.S.C. § 706 (Administrative Procedure Act provisions delineating the permitted scope of judicial review of agency actions).  Here, BOP appears to have considered petitioner's many requests for relocation, weighed the various factors involved—including petitioner's current medical care

requirements—and ultimately decided that it is appropriate for petitioner to remain at FMC Devens.

Congress has specifically granted to BOP the responsibility of assigning federal prisoners to particular correctional facilities. 18 U.S.C. § 3621(b). BOP has "virtually unlimited discretion to place inmates wherever it deems appropriate" and this Court does not have jurisdiction to review those decisions. *Muniz v. Sabol*, 517 F.3d 29, 40 (1st Cir. 2008); *see Saint Fort*, 329 F.3d at 203.[2] BOP has complied with Congress's statutory directive by assigning petitioner to a particular facility. Therefore, this Court cannot review the BOP's legitimate exercise of its own discretionary powers.

### B.     The Administrative Procedure Act

Congress has explicitly exempted BOP's individual inmate assignment decisions from judicial review under the Administrative Procedure Act. 18 U.S.C. § 3625.[3] The statute leaves little room for doubt that Congress has prohibited judicial review of individual inmate placement decisions such as the one at issue here. *See, e.g.*, *Putnam*, 441 F. Supp. 2d at 255-56 ("there is no habeas review of discretionary routine placement decisions . . ."); *Fox v. Lappin*, 409 F. Supp. 2d 79, 89 (D. Mass. 2006) ("The Court . . . can only review the Bureau's policies regarding the

---

[2] This is not an instance where BOP had entirely refused to consider his reassignment. *See Saint Fort*, 329 F.3d at 203 ("[I]f a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him. But he may not challenge the agency's decision to exercise or not to exercise its discretion to grant relief."); *Carranza*, 277 F.3d at 71 ("[A]n alien could bring a habeas claim if he was not afforded access to the process through which the INS could exercise its discretion to withhold deportation. The alien could not, however, challenge the INS's decision (i.e., its exercise or non-exercise of discretion) on its merits.") (internal citations omitted); *Goncalves*, 144 F.3d at 125 ("Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant relief.").

[3] Under 18 U.S.C. § 3625, "[t]he provisions of [the APA] do not apply to the making of any determination, decision, or order under this subchapter." The subchapter referred to includes BOP's placement decisions, which can be found in § 3621(b) and §3624(c).

placement of inmates . . . not the decision itself.").

### III.     Failure to State a Claim upon Which Relief Can Be Granted

Petitioner's habeas action also fails to state a claim upon which a relief can be granted. Prisoners do not have a protected liberty interest in being assigned to a particular institution or classification. *Moody v. Daggett*, 429 U.S. 78, 88 (1978) ("Congress has given federal prison officials full discretion to control these conditions of confinement . . . and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (holding that no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate). As described by the Supreme Court, liberty interests created by prison regulations are limited to instances where such regulations involve "atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life". *Sandin v. Connor*, 515 U.S. 472, 484 (1995). That is clearly not the case here, where petitioner suffers from—at worst—an overly-cautious classification of his medical condition and substantial distance from his family in Texas. Thus, petitioner does not have a protected constitutional interest that can serve as the foundation for his habeas claim and the petition therefore fails to state a claim upon which relief can be granted.

### IV.     Conclusion

For the foregoing reasons, the respondent's motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 21, 2010                           United States District Judge